NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FOUAD DAKKA, HOUDA DAKKA, NOURA DAKKA, ZAINA DAKKA, and NAGIB DAKKA, | : : : | |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | Civ. No. 09-4564 (WHW) |
| CITY OF HACKENSACK, HACKENSACK POLICE DEPARTMENT, STATE OF NEW JERSEY, DET. TINA M. CLOUSE, ABC ENTITY, A STATE DEFENDANT, CORPORATION OR ENTITY, AND SEVERAL JOHN DOES, ALL INDIVDUALS, | : : : : : : : | |
| Defendants. | : | |

**Walls, Senior District Judge**

  Defendant, the State of New Jersey, moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims asserted against it by plaintiffs, Fouad Dakka, Houda Dakka, Noura Dakka, Zaina Dakka, and Nagib Dakka.  Defendant argues that plaintiffs' constitutional claims brought pursuant to 42 U.S.C. § 1983 should be dismissed because the State is not a "person" amenable to suit under that statute.  Defendant contends that plaintiffs' state tort claims should be dismissed as to the State because plaintiffs failed to file a notice of tort claim with the State of New Jersey as required by N.J.S.A. 59:8-1 and because the State of New Jersey cannot be liable for the alleged conduct of the municipal defendants.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides the motion without oral argument.  Defendant's motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Fouad Dakka ("Dakka"), his ex-wife, Houda Dakka, and their three minor children are suing the City of Hackensack, the Hackensack Police Department, the State of New Jersey, Detective Tina M. Clouse, Police Officer Borntrager, and other unidentified defendants based on an incident that allegedly occurred on April 7, 2007.

Plaintiffs allege: On April 7, 2007, "Plaintiff Dakka was called by Detective Clouse to bring his minor daughter [Noura] Dakka in for the signing of a complaint that some other girl filed against her in retaliation for plaintiff's daughter having filed a complaint against this girl." (Am. Compl. ¶ 10.) Dakka complied with Detective Clouse's request and brought his eleven year old daughter to the Hackensack Police Department. Dakka "advised that he spoke with [his] attorney and that [the attorney] was parking his car in the back and 'coming around' and that he and his family (who were already waiting outside the police department on State Street) would just speak to the attorney and then come right in." (Id. ¶ 17.) "With that, Detective Tina Clouse became extremely irate, indicated that she refused to wait even a second for any attorney or for any reason and stormed after the plaintiff." (Id. ¶ 18.) Detective Clouse complained that "she was already late for her personal plans for that day" and "lunged forward at Noura Dakka, grabbing her arm" and attempted to pull her into the police department. (Id. ¶ 19.) Noura grabbed onto her father, who was standing between Detective Clouse and Noura, and he reciprocated with a protective hug. (Id. ¶¶ 20-21.) "Detective Clouse responded by not permitting this protective hug but instead physically assaulted the plaintiff F. Dakka, by grabbing him and manhandling him." Defendant P.O Borntrager and other unidentified defendants grabbed Dakka and "[threw] him to the ground in a violent manner, in front of his two minor daughters, his 5 year old son, and his wife." (Id. ¶ 21.) "These defendants thereafter proceeded

2

to beat him with arms, knees and legs, forcing his face and body into the ground and injuring him, while placing handcuffs on him, all in front of his children and wife who were screaming." (Id. ¶ 22.)  "They then picked him up, shoved him into the wall of the outside of the police station and searched him, while his family watched and screamed in horror.  The defendants yell[ed] at the family to 'shut up' all through the matter." (Id. ¶ 22.)  Dakka "did not fight back at all but kept asking why they were doing this." (Id. ¶¶ 22-23.)  "Immediately thereafter, Det. Clouse grabbed plaintiff's daughter, [Noura] Dakka and took her away to interrogate her, outside of the presence of her mother or father or attorney who had now entered the police station." (Id. ¶ 24.)  While the father was in custody, police personnel were whispering derogatory terms such as: "typical Arab," "fucking terrorist," and "Muslim." (Id. ¶ 25.)  "Plaintiff was thereafter denied his ability to see his attorney who had arrived immediately after his beating and humiliation and was continued to be denied the ability to see him for some time." (Id. ¶ 26.)

Plaintiffs say that, to their surprise, the Police Department filed a charge of aggravated assault on a police officer against Dakka, which was dismissed. (Id. ¶ 28.)

Plaintiffs claim that as a result of the incident, "plaintiff [Fouad Dakka] has suffered physical injury, humiliation, mental anguish, distress and psychological problems." (Id. ¶ 30.) Moreover, Dakka's family "became so scared that they were forced, out of this continued fear" to flee the United States for Lebanon. (Id. ¶ 30.)  "[The] distance has left the family torn apart and estranged husband from wife over time" and "it has been impossible" for Dakka "to maintain any type of relationship with his children." (Id. ¶ 31.)  Dakka seeks in excess of ten million dollars and such other relief as the Court may deem appropriate for pain, suffering, humiliation, and the destruction of his family. (Id., Prayer for Relief.)

3

On July 2, 2007, Dakka served a notice of claim to the Hackensack Police Department, Detective Tina M. Clouse, Police Officer Borntrager, and several unidentified individuals. Dakka has not served a notice of claim to the State of New Jersey. On April 3, 2009, plaintiffs filed their complaint in the Superior Court of New Jersey-Law Division against all of the parties including the State of New Jersey. On September 3, 2009, plaintiffs filed an amended complaint. On August 20, 2009, defendant Tina Clouse removed the action to this Court on the grounds that plaintiffs' amended complaint pleads a claim arising under the laws of the United States, specifically 42 U.S.C. § 1983. On November 4, 2009, an order was filed extending the time by which the State of New Jersey must respond to the amended complaint to November 15, 2009.

On November 16, 2009, the State of New Jersey moved to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The State maintains that plaintiffs failed to serve the State with a notice of claim as required by N.J.S.A. 59:8-1 and that the State of New Jersey cannot be liable for the alleged conduct of the municipal defendants.

## LEGAL STANDARD

### Motion to Dismiss

The applicable standard under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-plead allegations in the complaint as true, draw all reasonable inferences in favor of the non-moving party, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. See In re Burlingotn coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).

In considering the plaintiff's claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (2d ed. 1990). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." Id.

"On a motion to dismiss, 'a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.' Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir.1986).

## DISCUSSION

## Constitutional Claims

The State of New Jersey maintains that plaintiffs' § 1983 action against it should be dismissed because the State is not a "person" that can be sued under that statute.[1] The statute reads:

> Every persons who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To be liable under § 1983, a defendant must be a "person." In Will v. Michigan Dept. of State Police et al, 491 U.S. 58, 71 (1989), the United States Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court explained:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66 (internal citations omitted).

---

[1] The Court notes that its analysis has been burdened by plaintiff's failure to provide well-researched and cogent briefing in support of his position.

Plaintiffs argue that they are not suing the State as a "person," but as an entity for its alleged discriminatory policies that led to the complained of incident: "plaintiffs have not just sought to proceed against the defendant State of New Jersey as a person, but as an entity with certain responsibilities which they failed to live up to . . . ." (Pl. Br. at 3.)  Plaintiffs also argue that they "are not just claiming that defendant State of New Jersey is liable for the actions of the police officers," but that the "State participated expressly and/or impliedly in permitting an environment where the injury to the plaintiffs could be sustained." (Id.)  Finally, plaintiffs retort that "the argument of whether or not the State is a 'person' is one the State has made and not one advanced by the plaintiff and therefore has no applicability in limiting the liability that may be attributable to the State of New Jersey or any of its departments or agencies." (Id. at 8.)

The Court finds that plaintiffs misconstrue the term "person."  As discussed, 42 U.S.C. § 1983 applies only to "persons."  An implied assumption that plaintiffs are making when suing the State of New Jersey under 42 U.S.C. § 1983 is that the State of New Jersey is a "person."  The Supreme Court has held that the State is not a "person" for purposes of this statute.  Plaintiffs argue that this fact "has no applicability in limiting the liability that may be attributable to the State of New Jersey or any of its departments or agencies." (Pl. Br. at 8.)  Plaintiffs cite no case law to demonstrate that the State is a "person" for purposes of § 1983.  Plaintiffs' constitutional claims against the State of New Jersey are dismissed.

### State Tort Claims

The State of New Jersey moves to dismiss plaintiffs' tort claims against the State because plaintiff failed to file a notice of claim with the State as required by N.J.S.A. 59:8-9.

7

The New Jersey Tort Claims Act declares that: "[n]o action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. Before filing a complaint, a plaintiff is obligated to submit a notice of claim to the public entity within ninety days of the claims' accrual. The notice of claim must include: (a) the name and post office address of the claimant; (b) the post office address to which the person presenting the claim desired notices to be sent; (c) the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (d) a general description of the injury, damage or loss incurred so far as it may be known at the time of the presentation for the claim; (e) the name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and (f) the amount claimed as of the date of presentation of the claim, including an estimate of any prospective injury or damage and the basis of computation of the amount claimed. N.J.S.A. 59:8-4.

If a plaintiff fails to file a notice of claim within the 90 day time limit, he or she can apply to the Superior court for permission to file the notice of claim within one year of the claim's accrual. N.J.S.A. 59:8-9. A cause of action generally accrues "when any wrongful act or omission resulting in any injury, however slight, for which the law provides a remedy, occurs." Beauchamp v. Amedio, 164 N.J. 111, 116-117 (2002) (internal citations omitted). Permission to file a late notice of claims shall be given for "extraordinary circumstances." Id. The existence of "extraordinary circumstances" is to be determined by the courts on a case-by-case basis. Rolax v. Whitman et al, 175 F. Supp. 2d 720, 731 (D.N.J. 2001). "Ignorance of the law, or the tort Claims Act's ninety day notice requirement, without more, do not qualify as extraordinary

8

circumstances justifying a delay." Id., (citing Forcella v. city of Ocean City, 70 F. Supp. 2d 512, 517 (D.N.J. 1999); and S.P. v. Collier High School, 319 N.J. Super. 452, 464 (App. Div. 1999)).

Plaintiff does not dispute that it is in violation of the "strictest terms" of the statute because it has not filed a notice of tort claim against the State of New Jersey within the allotted period.[2] However, plaintiffs urge the Court to exercise its discretion in excusing this violation based on the specific circumstances of the case, namely that the father is an immigrant to the United States with less than high school education who was acting pro se when he filed the notice of tort claim with the other defendants. Plaintiffs explain that he thought he "was complying with the law and that serving a public town and police department was the same as serving the State of New Jersey." Plaintiffs argue that their tort claims against the State of New Jersey should not be dismissed because the "State of New Jersey has demonstrated no prejudice to them by not formally being included in the list of those who were timely served with the Tort Claim Notice" and the State was "put on notice of this Tort Claim . . . within two years from the date of the incident." (Pl. Br. at 6.)

Here, plaintiffs' claim accrued on April 7, 2007, the date when the alleged injury took place. See Beauchamp, 164 N.J. at 116-117. Plaintiffs have not filed a notice of tort claim with the State of New Jersey to this day. Since more than one year has passed since the accrual of plaintiffs' claims, this Court does not have the discretion to extend the filing period. N.J.S.A. 59:8-9; see also Iaconianni v. New Jersey Turnpike Authority, 236 N.J. Super. 294, 298 (1989).

---

[2] It should be noted that plaintiffs did not state in their amended complaint that they have not served a notice of claim on the State of New Jersey. However, plaintiffs have admitted in a letter to the State that they have not filed a notice of claim with the State. The Court considers plaintiff's admission without converting the 12(b)(6) motion into one for summary judgment. See Mele, 359 F.3d at 255 n. 5 (explaining that a document integral to a complaint may be considered without converting a motion to dismiss into one for summary judgment.)

9

It should be noted that even if the Court had discretion, the circumstances pled by the plaintiffs are not "extraordinary circumstances." See Beauchamp, 164 N.J. at 116-117. "The purpose of adding the phrase 'extraordinary circumstances' was to 'raise the bar for the filing of late notice from a 'fairly permissive standards' to a 'more demanding one.'" Id., 164 N.J. at 118 (quoting Lowe v. Zarghami, 158 N.J. 606, 625 (1999)). That Dakka is an immigrant with less than high school education and was acting pro se at the time does not justify his failure to comply with the statute, which he was able to do with respect to the other defendants. Moreover, plaintiffs have waited far beyond the discretionary one year period and have not even asked for an extension to file a late notice of claim, but merely assert that because the State has not been prejudiced, their tort claims against the State should not be dismissed. This claim is without support in the law.

Plaintiffs also argue that "[e]ven if the Court finds that the Tort Claims notice as filed and served had not already done so, the filing of the original complaint on April 3, 2009 certainly put the State of New Jersey on Notice." (Pl. Br. at 19.) What plaintiffs suggest is that there was substantial compliance with the statute.

New Jersey courts have instructed that "although failure to satisfy the time requirement under subsection a. constitutes an absolute bar to recovery against an entity, Karczewski v. Nowicki, 188 N.J. Super. 355, 357 (App. Div. 1982), the doctrine of substantial compliance has been invoked to alleviate the hardship and unjust consequences which result when an otherwise valid claim is defeated on technical grounds even though it would have posed no prejudice to the entity." Anske v. Borough of Palisades Park, 139 N.J. Super. 342, 347 (App. Div. 1976). This doctrine does not apply to the present circumstances. The complaint itself cannot be used to satisfy the requirement of the statute because it was filed on April 3, 2009, almost two years after

10

the accrual of the claim. Moreover, while paragraph e. in the notice of tort claims to the other named defendants mentioned the State of New Jersey, it was not filed with the State, and this Court finds that this paragraph alone does not constitute substantial compliance. Plaintiffs' tort claims against the State of New Jersey are dismissed. Because the Court has dismissed plaintiffs' tort claims against the State of New Jersey due to their non-compliance with N.J.S.A. 59:8-9, it is unnecessary to address the States' third argument, that the State of New Jersey cannot be liable for the alleged conduct of the municipal defendants.

## CONCLUSION

The State of New Jersey's motion to dismiss plaintiffs' constitutional claims is granted because the State is not a "person" for purposes of § 1983. The State's motion to dismiss plaintiffs' tort claims against it is granted because plaintiffs have not filed a notice of tort claim to the State pursuant to N.J.S.A. 59:8-9.

It is on this 13th day of April, 2010:

ORDERED that the State of New Jersey's Motion to Dismiss Plaintiffs' Amended Complaint as to the State is GRANTED.

**s/ William H. Walls**
United States Senior District Judge

April, 13, 2010